NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MOSES ORTIZ,                       :
                                   :   Civil Action No. 11-2041 (DMC)(MF)
                 Plaintiff,        :
                                   :
                                   :
                 v.                :   **OPINION**
                                   :
BRIAN FRIEDMAN, et al.,            :
                                   :
                 Defendants.       :

APPEARANCES:

       MOSES ORTIZ, Plaintiff pro se
       #000456
       East Jersey State Prison, Special Treatment Unit
       CN 905, 8 Production Way
       Avenel, New Jersey 07001

CAVANAUGH, District Judge

       Plaintiff, Moses Ortiz, an involuntarily committed person

pursuant to the Sexually Violent Predator Act ("SVPA"), N.J.S.A.

30:4-27.24, et seq., seeks to bring this action in forma

pauperis.  Based on his affidavit of indigence, the Court will

grant plaintiff's application to proceed in forma pauperis

("IFP") pursuant to 28 U.S.C. § 1915(a) (1998) and order the

Clerk of the Court to file the Complaint.

       At this time, the Court must review the Complaint, pursuant

to 28 U.S.C. § 1915(e)(2), to determine whether the action should

be dismissed as frivolous or malicious, for failure to state a

claim upon which relief may be granted, or because it seeks

monetary relief from a defendant who is immune from such relief.
For the reasons set forth below, the Court concludes that this
action should proceed in part.

## I.  BACKGROUND

Plaintiff, Moses Ortiz, brings this civil rights action,
pursuant to 42 U.S.C. § 1983, against the following defendants:
Brian Friedman, Director of Psychology at the East Jersey State
Prison-Special Treatment Unit ("EJSP-STU"); Jacylen Ottino,
Program Coordinator at the EJSP-STU;  Mark Singer, Deputy
Attorney General for the State of New Jersey; Shantay Brame
Adams, Assistant Unit Director at the EJSP-STU; Merril Main,
Clinical Director at EJSP-STU; Steve Johnson, Assistant
Superintendent at EJSP-STU; Yvette Corniel, Program Coordinator
at EJSP-STU; and Jonathan Poag, Director of the Division of
Mental Health Services in Trenton, New Jersey.  (Complaint,
Caption and ¶¶ 4b-4i).  The following factual allegations are
taken from the Complaint, and are accepted for purposes of this
screening only.  The Court has made no findings as to the
veracity of plaintiff's allegations.

Plaintiff alleges that, on April 4, 2011, defendants Adams
and Ottino personally informed Plaintiff that the only way he can
be released from "MAP" lock-up ("modified activities program") is
for Plaintiff to agree to take psychotropic medications.
Plaintiff alleges that he was placed in MAP on June 25, 2010, and

2

has remained there. He further alleges that his placement in MAP was intended as punishment, and that he is unable to attend therapy sessions, recreational sessions, and socializing therapy, which is contrary to his court-ordered civil commitment. (Compl., ¶ 6).

Plaintiff further states that he has attempted to resolve this matter through his Public Advocacy Office Attorney, Peter W. Latimer, Esq. He attaches to his Complaint a copy of a motion to enforce litigant's rights that was filed by Latimer on Plaintiff's behalf in state court. The certification attached to the state motion certifies that, on June 25, 2010, as Judge Friedman was walking to court, Plaintiff called out, "You are going to hell for what you are doing." Plaintiff was then placed in protective custody and transferred to MAP status, where he remains.

Plaintiff seeks his immediate release from MAP status and reassignment to another facility for his safety and security. He also asks for an unspecified amount in compensatory damages for the time that he was confined in MAP. Plaintiff further asks that all staff involved in this action be removed from the EJSP-STU and that a Special Master be appointed to oversee this case. (Compl., ¶ 7).

## II.  STANDARDS FOR A SUA SPONTE DISMISSAL

A district court is required to review a complaint in a civil action where the litigant is proceeding in forma pauperis. Specifically, the court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief, pursuant to 28 U.S.C. § 1915(e)(2)(B).  Accordingly, because Plaintiff is proceeding in forma pauperis in this matter, this action is subject to sua sponte screening for dismissal under 28 U.S.C. § 1915(e)(2)(B).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007)(following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  See also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

4

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  See also Erickson, 551 U.S. at 93-94 (In a pro se prisoner civil rights complaint, the Court reviewed whether the complaint complied with the pleading requirements of Rule 8(a)(2)).

However, recently, the Supreme Court revised this standard for summary dismissal of a Complaint that fails to state a claim in Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009).  The issue before the Supreme Court was whether Iqbal's civil rights complaint adequately alleged defendants' personal involvement in discriminatory decisions regarding Iqbal's treatment during detention at the Metropolitan Detention Center which, if true, violated his constitutional rights.  Id.  The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the

5

claim showing that the pleader is entitled to relief."

Fed.R.Civ.P. 8(a)(2).[1]  Citing its recent opinion in Bell

Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), for the

proposition that "[a] pleading that offers 'labels and

conclusions' or 'a formulaic recitation of the elements of a

cause of action will not do,'"Iqbal, 129 S.Ct. at 1949 (quoting

Twombly, 550 U.S. at 555), the Supreme Court identified two

working principles underlying the failure to state a claim

standard:

> First, the tenet that a court must accept as true all of the
> allegations contained in a complaint is inapplicable to
> legal conclusions.  Threadbare recitals of the elements of a
> cause of action, supported by mere conclusory statements, do
> not suffice ... .  Rule 8 ... does not unlock the doors of
> discovery for a plaintiff armed with nothing more than
> conclusions.  Second, only a complaint that states a
> plausible claim for relief survives a motion to dismiss.
> Determining whether a complaint states a plausible claim for
> relief will ... be a context-specific task that requires the
> reviewing court to draw on its judicial experience and
> common sense.  But where the well-pleaded facts do not
> permit the court to infer more than the mere possibility of
> misconduct, the complaint has alleged-but it has not
> "show[n]"-"that the pleader is entitled to relief."   Fed.
> Rule Civ. Proc. 8(a)(2).

Iqbal, 129 S.Ct. at 1949-1950 (citations omitted).

The Court further explained that

> a court considering a motion to dismiss can choose to begin
> by identifying pleadings that, because they are no more than
> conclusions, are not entitled to the assumption of truth.
> While legal conclusions can provide the framework of a
> complaint, they must be supported by factual allegations.
> When there are well-pleaded factual allegations, a court

---

[1]   Rule 8(d)(1) provides that "[e]ach allegation must be
simple, concise, and direct.  No technical form is required."
Fed.R.Civ.P. 8(d).

should assume their veracity and then determine whether they
plausibly give rise to an entitlement to relief.

Iqbal, 129 S.Ct. at 1950.

Thus, to prevent a summary dismissal, civil complaints must
now allege "sufficient factual matter" to show that a claim is
facially plausible. This then "allows the court to draw the
reasonable inference that the defendant is liable for the
misconduct alleged." Id. at 1948. The Supreme Court's ruling in
Iqbal emphasizes that a plaintiff must demonstrate that the
allegations of his complaint are plausible. Id. at 1949-50; see
also Twombly, 505 U.S. at 555, & n.3; Fowler v. UPMC Shadyside,
578 F.3d 203, 210(3d Cir. 2009).

Consequently, the Third Circuit observed that Iqbal provides
the "final nail-in-the-coffin for the 'no set of facts' standard"
set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[2] that
applied to federal complaints before Twombly. Fowler, 578 F.3d
at 210. The Third Circuit now requires that a district court
must conduct the two-part analysis set forth in Iqbal when
presented with a motion to dismiss:

First, the factual and legal elements of a claim should be
separated. The District Court must accept all of the

---

[2] In Conley, as stated above, a district court was
permitted to summarily dismiss a complaint for failure to state a
claim only if "it appear[ed] beyond doubt that the plaintiff can
prove no set of facts in support of his claim which would entitle
him to relief. Id., 355 U.S. at 45-46. Under this "no set of
facts" standard, a complaint could effectively survive a motion
to dismiss so long as it contained a bare recitation of the
claim's legal elements.

7

complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 129 S.Ct. at 1949-50]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." [Id.]   In other words, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to "show" such an entitlement with its facts.  See Phillips, 515 F.3d at 234-35.  As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'-'that the pleader is entitled to relief.'"   Iqbal, [129 S.Ct. at 1949-50].  This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Fowler, 578 F.3d at 210-211.

This Court is mindful, however, that the sufficiency of this pro se pleading must be construed liberally in favor of Plaintiff, even after Iqbal.  See Erickson v. Pardus, 551 U.S. 89 (2007).  Moreover, a court should not dismiss a complaint with prejudice for failure to state a claim without granting leave to amend, unless it finds bad faith, undue delay, prejudice or futility. See Grayson v. Mayview State Hosp., 293 F.3d 103, 110-111 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 117 (3d Cir. 2000).

### III.   SECTION 1983 ACTIONS

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

8

> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must

allege, first, the violation of a right secured by the

Constitution or laws of the United States and, second, that the

alleged deprivation was committed or caused by a person acting

under color of state law.  West v. Atkins, 487 U.S. 42, 48

(1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir.

1994).

## IV.   THE NEW JERSEY SEXUALLY VIOLENT PREDATOR ACT

The New Jersey SVPA, N.J.S.A. 30:4-27.24 et seq., provides

for the custody, care and treatment of involuntarily committed

persons who are deemed to be sexually violent predators ("SVP").

N.J.S.A. 30:4-27.26.  The New Jersey Department of Corrections

("DOC") operates the facilities designated for SVPs, N.J.S.A.

30:4-27.34(a); and the New Jersey Department of Human Services

("DHS") provides for their treatment.  N.J.S.A. 30:4-27.34(b).

The SVPA was amended in 2003 to require that regulations be

promulgated jointly by the DOC and the DHS, in consultation with

of the Attorney General, taking "into consideration the rights of

the patients as set forth in section ten of P.L. 1965, c. 59 (C.

30:4-24.2) ... [to] specifically address the differing needs and

specific characteristics of, and treatment protocols related to,

sexually violent predators."  N.J.S.A. 30:4-27.34(d).

In passing the SVPA, the New Jersey Legislature made specific findings regarding SVPs.  N.J.S.A. 30:4-27.25.  The Legislature noted that it was necessary to modify the previous civil commitment framework and additionally separate SVPs from other persons who have been civilly committed.  Id.  The SVPA defines a SVP as:

> ... a person who has been convicted, adjudicated delinquent or found not guilty by reason of insanity for commission of a sexually violent offense, or has been charged with a sexually violent offense but found to be incompetent to stand trial, and suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment.

N.J.S.A. 30:4-27.26(b).

Those persons committed under the SVPA shall receive annual review hearings.  N.J.S.A. 30:4-27.35.  A SVP may be released from involuntary civil commitment upon recommendation of the DHS or by the SVP's own petition for discharge.  N.J.S.A. 30:4-27.36.

## V.   ANALYSIS

### A.   MAP Confinement Claim

Generally, the Fourteenth Amendment requires that civilly committed persons not be subjected to conditions that amount to punishment, Bell v. Wolfish, 441 U.S. 520, 536 (1979),[3] within the bounds of professional discretion, Youngberg v. Romeo, 457

---

[3]   In Bell v. Wolfish, the Supreme Court held that whether a condition of confinement of pretrial detainees violated their constitutional rights turns on whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate government purpose.  441 U.S. 520, 535-39, (1979).

10

U.S. 307, 321-22 (1982)("Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish"). Specifically, in Youngberg, the Supreme Court held that civilly committed persons do have constitutionally protected interests, but that these rights must be balanced against the reasons put forth by the State for restricting their liberties. Id. at 307. The Constitution is not concerned with de minimis restrictions on patients' liberties. Id. at 320. Moreover, "due process requires that the conditions and duration of confinement [for civilly confined persons] bear some reasonable relation to the purpose for which persons are committed." Seling, 531 U.S. at 265. While the nature of an SVP's confinement may factor in this balance of what is reasonable, it is clearly established that the substantive due process protections of the Fourteenth Amendment apply to SVPs. See Andrews v. Neer, 253 F.3d 1052, 1061 (8th Cir. 2001)(applying the Fourteenth Amendment's "objective reasonableness" standard to excessive force claims brought by civilly committed SVPs).

Plaintiff's claim against defendants Ottino, Adams, Main and Corniel, principally alleges that the decisions to place Plaintiff in MAP and keep him there for more than a year without access to therapy and treatment as prescribed for civilly committed persons under the SVPA, amounts to unconstitutional

11

punishment. He further complains that he can not be released from MAP unless he consents to psychotropic medication.

The Third Circuit has held that placement of a civilly committed SVP in segregated confinement does not violate due process unless the deprivation of liberty is in some way extreme. See Deavers v. Santiago, 243 Fed. Appx. 719, 721 (3d Cir. 2007)(applying Sandin v. Conner, 515 U.S. 472 (1995),[4] to segregated confinement of civilly committed SVPs). See also Thielman v. Leean, 282 F.3d 478 (7th Cir. 2002)(likewise extending Sandin to civil commitment settings). Thus, to the extent that Plaintiff is alleging that he is not allowed to participate in any therapy or other treatment sessions unless he consents to forced medication, he may be able to support a cognizable claim of constitutional magnitude.

The Fourteenth Amendment to the United States Constitution, § 1, guarantees that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." This due process guarantee has been interpreted to have both procedural and substantive components, the latter which protects fundamental rights that are so "implicit in the concept of ordered liberty" that "neither liberty nor justice would exist if

---

[4] In Sandin, the Supreme Court held that there was no cognizable liberty interest in freedom from additional restraint in a prison setting. See 515 U.S. at 486 ("We hold that [the prisoner's] discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest.").

they were sacrificed." Palko v. Conn., 302 U.S. 319, 325 (1937).
These fundamental rights include those guaranteed by the Bill of
Rights, as well as certain liberty and privacy interests
implicitly protected by the Due Process Clause, such as the right
to marry. Washington v. Glucksberg, 521 U.S. 702, 720 (1997).
Substantive due process also protects against government conduct
that is so egregious that it "shocks the conscience," even where
the conduct does not implicate any specific fundamental right.
See United States v. Salerno, 481 U.S. 739, 746 (1987).

Laws disturbing fundamental rights receive strict scrutiny
and will be upheld if they are "narrowly tailored to serve a
compelling state interest." Reno v. Flores, 507 U.S. 292, 302
(1993). However, regulations not implicating fundamental rights
(in other words, those claims attacking particularly egregious or
arbitrary governmental actions) are analyzed under the
deferential standard referred to as the rational basis review,
and will generally succeed only if the government action shocks
the conscience. See Glucksberg, 521 U.S. at 728.

With respect to Plaintiff's claim, it appears that he is
asserting that he has a fundamental right to adequate treatment
as a civilly committed sex offender, and that as a result of his
allegedly unjustified placement in MAP status, he is not being
afforded any therapy or treatment. The Supreme Court established
that there exists a constitutionally protected right of mentally
retarded persons confined at a state institution to minimally

13

adequate treatment. Specifically, the Supreme Court held that there is a constitutional right of mentally disabled persons confined at a state institution to "minimally adequate habilitation", self-care treatment or training to the extent necessary to protect their recognized fundamental rights to safety and freedom from physical restraints. Youngberg, 457 U.S. at 316, 319 and 322.

The Supreme Court further held that, where a fundamental right is at issue, a district court must balance "the liberty of the individual and the demands of an organized society" to determine whether such right has been violated. Youngberg, 457 U.S. at 320. Although restrictions burdening a fundamental right generally receive strict scrutiny, in Youngberg, the Supreme Court found that this sort of rigorous analysis would unduly burden the ability of states, specifically their professional employees, to administer mental health institutions. Id. at 322. Consequently, the Court concluded that "the Constitution only requires that the courts make certain that professional judgment was in fact exercised," because "[i]t is not appropriate for the courts to specify which of several professionally acceptable choices should have been made." Id. at 321 (internal quotation and citation omitted). Thus, a decision, "if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or

14

standards as to demonstrate that the person responsible actually did not base the decision on such judgment." Id. at 323.

In Leamer v. Fauver, 288 F.3d 532 (3d Cir. 2002), the United States Court of Appeals for the Third Circuit held that New Jersey's unique former statutory scheme for sex offenders that predicated the term of sentence on a prisoner's response to treatment and created a right to treatment created a fundamental and cognizable liberty interest in treatment, for purposes of both procedural and substantive due process analyses. 288 F.3d at 545. Leamer was not a civilly committed sex offender like plaintiff here. Rather, Leamer was a convicted sex offender whose confinement and treatment were inextricably linked pursuant to statute. The sentencing court had classified Leamer as having a "mental aberration" and in need of "specialized treatment," which automatically subjected Leamer to the maximum incarceration permitted by law unless he is cured prior to that point. Leamer could not reduce his sentence through good behavior credits, parole policies or other credits. Instead, he could only shorten his incarceration through successful therapy, which was an "inherent and integral element" of the statutory scheme. Consequently, the Third Circuit found that deprivation of treatment would be a grievous loss not emanating from the sentence. Leamer, 288 F.3d at 544.

Apart from that recognized in Youngberg to prevent the violation of recognized fundamental rights to safety and freedom

from physical restraints, this Court finds the Third Circuit's holding in Leamer to clearly extend to an involuntarily committed sex offender under New Jersey's SVPA. Like Leamer, the length of Plaintiff's confinement under the SVPA is predicated on his response to treatment. Indeed, the provisions of the SVPA explicitly recognize New Jersey's obligation to provide treatment to SVPs for their eventual release based on successful therapy. See N.J.S.A. 30:4-27.32(a)("If the court finds by clear and convincing evidence that the person needs continued involuntary commitment as a sexually violent predator, it shall issue an order authorizing the involuntary commitment of the person to a facility designated for the custody, care and *treatment* of sexually violent predators")(emphasis added); N.J.S.A. 30:4-34(b)("The Division of Mental Health Services in the Department of Human Services shall provide or arrange for treatment for a person committed pursuant to this act. Such treatment shall be appropriately tailored to address the specific needs of sexually violent predators."); N.J.S.A. 30:4-27.36(a)(At any time during the involuntary commitment of a person under this act, if the person's treatment team determines that the person's mental condition has so changed that the person is not likely to engage in acts of sexual violence if released, the treatment team shall recommend that the Department of Human Services authorize the person to petition the court for discharge from involuntary commitment status"); see also Kansas v. Hendricks, 521 U.S. 346,

16

367 (1997)(concluding from similarly-worded provisions of Kansas
SVP Act that "the State has a statutory obligation to provide
'care and treatment for [persons adjudged sexually dangerous]
designed to effect recovery ....")(alterations in
original)(internal citations omitted).

Therefore, based on Youngberg and Leamer, this Court
concludes that Plaintiff may have a fundamental liberty interest
in treatment.[5]  Plaintiff has alleged a categorical denial of
therapy and treatment sessions due to his restrictive confinement
in MAP.  Moreover, he claims that his placement in MAP was
retaliatory and unconstitutional, in violation of his First
Amendment rights, because he merely yelled at a judge from a
distance and did not actually threaten anyone.  Additionally,
Plaintiff alleges that the only way he may be released from MAP
is to agree to take psychotropic drugs, which amounts to forced
medication.  These facts, if true, may support a claim that
Plaintiff has been denied a fundamental liberty interest in
violation of his First and Fourteenth Amendment rights.
Accordingly, the Court will allow this claim to proceed against
defendants, Ottino, Adams, Main and Corniel, at this time.

_____

[5]  In Leamer, the Third Circuit, relying on Sandin, found
that Leamer would face "significant obstacles" in establishing a
procedural due process claim based on his placement on RAP
(restricted activities program) status because the mere fact of
placement in administrative segregation is not in and of itself
enough to implicate a liberty interest.  Leamer, 288 F.3d at 546.
However, in this instance, it would appear from the Complaint
that Plaintiff is alleging a categorical denial of treatment as
punishment.

17

B.  Supervisor Liability Claim

Plaintiff's claims against defendants Friedman, Singer,
Johnson and Poag, basically allege that these defendants failed
to oversee the proper treatment of the residents at the EJSP-STU
and overlooked how the New Jersey Department of Corrections ran
the unit and used punishment as a form of treatment.  (Compl., ¶¶
4b, 4d, 4g and 4i).  This essentially is a claim of supervisor
liability.

As a general rule, government officials may not be held
liable for the unconstitutional conduct of their subordinates
under a theory of respondeat superior.  See Iqbal, 129 S.Ct. at
1948; Monell v. New York City Dept. Of Social Servs., 436 U.S.
658, 691 (1978)(finding no vicarious liability for a municipal
"person" under 42 U.S.C. § 1983); Robertson v. Sichel, 127 U.S.
507, 515-16 (1888)("A public officer or agent is not responsible
for the misfeasances or position wrongs, or for the nonfeasances,
or negligences, or omissions of duty, of subagents or servants or
other persons properly employed by or under him, in discharge of
his official duties").  In Iqbal, the Supreme Court held that
"[b]ecause vicarious or supervisor liability is inapplicable to
Bivens[6] and § 1983 suits, a plaintiff must plead that each
Government-official defendant, through the official's own
individual actions, has violated the Constitution."  Iqbal, 129

_____

[6]  Bivens v. Six Unknown Named Agents of Federal Bureau of
Narcotics, 403 U.S. 388 (1971)

18

S.Ct. at 1948.  Thus, each government official is liable only for
his or her own conduct.  The Court rejected the contention that
supervisor liability can be imposed where the official had only
"knowledge" or "acquiesced" in their subordinates conduct.  Id.,
129 S.Ct. at 1949.

    Under pre- Iqbal Third Circuit precedent, "[t]here are two
theories of supervisory liability," one under which supervisors
can be liable if they "established and maintained a policy,
practice or custom which directly caused [the] constitutional
harm," and another under which they can be liable if they
"participated in violating plaintiff's rights, directed others to
violate them, or, as the person[s] in charge, had knowledge of
and acquiesced in [their] subordinates' violations."  Santiago v.
Warminster Twp., 629 F.3d 121, 127 n. 5 (3d Cir. 2010)(internal
quotation marks omitted).  "Particularly after Iqbal, the
connection between the supervisor's directions and the
constitutional deprivation must be sufficient to demonstrate a
plausible nexus or affirmative link between the directions and
the specific deprivation of constitutional rights at issue."  Id.
at 130.

    The Third Circuit has recognized the potential effect that
Iqbal might have in altering the standard for supervisory
liability in a § 1983 suit but, to date, has declined to decide
whether Iqbal requires narrowing of the scope of the test.  See
Santiago, 629 F.3d 130 n. 8; Bayer v. Monroe County Children and

19

Youth Servs., 577 F.3d 186, 190 n. 5 (3d Cir. 2009)(stating in
light of Iqbal, it is uncertain whether proof of personal
knowledge, with nothing more, provides sufficient basis to impose
liability upon supervisory official).  Hence, it appears that,
under a supervisory theory of liability, and even in light of
Iqbal, personal involvement by a defendant remains the touchstone
for establishing liability for the violation of a plaintiff's
constitutional right.  Williams v. Lackawanna County Prison, 2010
WL 1491132, at *5 (M.D.Pa. Apr. 13, 2010).

     Facts showing personal involvement of the defendant must be
asserted; such assertions may be made through allegations of
specific facts showing that a defendant expressly directed the
deprivation of a plaintiff's constitutional rights or created
such policies where the subordinates had no discretion in
applying the policies in a fashion other than the one which
actually produced the alleged deprivation; e.g., supervisory
liability may attach if the plaintiff asserts facts showing that
the supervisor's actions were "the moving force" behind the harm
suffered by the plaintiff.  See Sample v. Diecks, 885 F.2d 1099,
1117-18 (3d Cir. 1989); see also Iqbal, 129 S.Ct. at 1949-54.

     Here, Plaintiff provides no facts describing how the
supervisory defendants allegedly violated his constitutional
rights, i.e., he fails to allege facts to show that these
defendants expressly directed the deprivation of his
constitutional rights, or that they created policies which left

                              20

subordinates with no discretion other than to apply them in a fashion which actually produced the alleged deprivation.  In short, Plaintiff has alleged no facts to support personal involvement by the supervisory defendants, and simply relies on recitations of legal conclusions such that they failed to supervise or failed to protect plaintiff in violation of his constitutional rights.  These bare allegations, "because they are no more than conclusions, are not entitled to the assumption of truth."  Iqbal, 129 S.Ct. at 1950.  Accordingly, this Court will dismiss the Complaint, as against defendants Friedman, Singer, Johnson and Poag, pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1), because plaintiff has failed to state a claim at this time.

V.   CONCLUSION

     For the reasons set forth above, plaintiff's Complaint will be dismissed without prejudice, in its entirety, as against defendants, Friedman, Singer, Johnson and Poag, for failure to state a claim at this time, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  However, the Complaint will be allowed to proceed at this time as against the remaining defendants, Ottino, Adams, Main and Corniel.  An appropriate order follows.


                              DENNIS M. CAVANAUGH
                              United States District Judge

Dated: 11/3/11


                              21